UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SHAQUE JOHNSON and REBEKIAH JOHNSON, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:22-CV-00137-JRG-DCP |
| KNOX COUNTY BOARD OF EDUCATION, et al., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

This case, arising under 42 U.S.C. § 1983, comes before the Court on the Motion to Dismiss on Behalf of Fred Wade and Martin Timms in their Individual Capacities [Doc. 49] and Knox County Board of Education ("KCBOE")'s Motion to Dismiss Second Amended Complaint [Doc. 48]. For the reasons discussed below, the motion to dismiss on behalf of Defendants Wade and Timms will be **GRANTED IN PART** and **DENIED IN PART**, and the motion to dismiss brought by KCBOE will be **GRANTED.**

## I. PROCEDURAL HISTORY

In April 2022, Rebekiah and Shaque Johnson ("Plaintiffs") filed a complaint pursuant to § 1983, alleging that KCBOE and various public officials violated their constitutional rights. [Doc. 4]. Plaintiffs moved to proceed in forma pauperis [Docs. 2, 11] and filed an amended complaint ("First Amended Complaint") [Doc. 15].

Magistrate Judge Debra Poplin granted Plaintiffs' motion to proceed in forma pauperis and issued a Report and Recommendation, screening the First Amended Complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(e)(2)(B). [Doc. 16]. In the Report and

Recommendation, Judge Poplin recommended that Plaintiffs' individual capacity claims against Fred Wade, Martin Timms, and the school resource officer ("SRO"), as well as their municipal liability claims against KCBOE, proceed beyond the initial screening phase. [*Id.* at 21]. She recommended that Plaintiffs' other claims be dismissed. [*Id.* at 20–21]. The Court adopted the Report and Recommendation. [Doc. 17].

Defendants Wade, Timms, and KCBOE then filed motions to dismiss the First Amended Complaint. [Docs. 23, 35]. While those motions were pending, Plaintiffs filed the Second Amended Complaint [Doc. 42], which alleges essentially the same claims that survived the screening of the First Amended Complaint. Wade, Timms, and KCBOE subsequently filed motions to dismiss the Second Amended Complaint. [Docs. 48, 49]. Plaintiffs have not filed a response to Defendants' motions to dismiss the Second Amended Complaint and the time in which to do so has passed. *See* E.D. Tenn. L.R. 7.1(a). This matter is ripe for review.

## II. FACTUAL ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

In support of their § 1983 claims, Plaintiffs allege the following facts:

On the afternoon of March 31, 2022, Rebekiah Johnson, and her young adult son Shaque Johnson went to New Hopewell Elementary, where Brandon Pratt was the principal, "to bring attention to the racism within the schools and administration that the Johnsons had experienced through Principal Brandon Pratt." [Doc. 42 ¶ 15]. Shaque Johnson stood across the street from one of the parking lot exit/entrances holding a sign that stated, "Mr. Pratt was wrong. Read eagleswithcolor.com" on one side and "the TRUTH about Principal Pratt, eagleswithcolor.com" on the other side. [*Id.*]. Rebekiah Johnson walked along the street on the side of the school with her sign that read "Mr. Pratt is racist. eagleswithcolor.com" on one side, while the other side read, "The Community needs to know! eagleswithcolor.com." [*Id.*]. Rebekiah Johnson and her son were

2

on the street, which is public property. [*Id.*]. As parents arrived to pick up their children, Rebekiah Johnson walked between the two exits/entrances holding her sign. [*Id.* ¶ 17].

The SRO approached Rebekiah Johnson and told her she needed to move across the street. [*Id.*]. Rebekiah Johnson told him that "she was on public property and had a right to stand where she was standing." [*Id.*]. The officer replied, "Yes . . . as long as you don't go behind the fence." [*Id.*]. At that time, Rebekiah Johnson was standing nearly thirty feet away from the fence. [¶ 17]. The SRO then walked away. [*Id.*]. Rebekiah Johnson continued walking along the street with her sign and only spoke with people who asked her a question. [*Id.* ¶ 18]. She did not impede traffic or create a disruption. [*Id.*].

Meanwhile, Shaque Johnson stood silently across the street from the other exit of the school so parents could see his sign as they left the school parking lot. [*Id.* ¶ 19]. While he stood there, the SRO and another older white gentleman who was later identified as Fred Wade, a teaching assistant at New Hopewell Elementary School, walked along the school driveway and stood near the exit. [*Id.*]. Wade began addressing Shaque Johnson across the street. [*Id.*]. He seemed angry and the SRO was carrying a gun, so Shaque Johnson began recording the interaction on his phone. [*Id.*]. Wade yelled at him from across the street, stating that Shaque Johnson "could not be recording." [Id.]. Shaque Johnson told Wade he could record and Wade threatened to take Shaque Johnson's phone from him. [*Id.*]. When most of the cars had left the parking lot, Wade and the SRO walked away. [*Id.*]. "Once the school driveway was pretty much cleared out Rebekiah and Shaque Johnson decided to pack up their signs to leave." [*Id.* ¶ 20].

On April 7, 2022, Rebekiah Johnson received a letter from Investigator Martin Timms. [*Id.* ¶ 22]. The letter stated, "It has come to the attention of the Knox County Schools Security Division that your recent protest at New Hopewell Elementary School has been inappropriate and

disruptive. As a result of this behavior, you are being issued a civility code letter." [*Id.*]. The letter cited Knox County Board of Education Policy B-230 and stated, "Further violations in Knox County Schools Board Policy B-230 may result in you being banned from coming on to any property owned or controlled by Knox County Schools." [*Id.*]. Finally, the letter stated that Rebekiah Johnson needed to make herself aware of Tenn. Code Ann. §§ 39-14-405, 39-14-406, and 39-17-305." [*Id.*]. Rebekiah Johnson needed to be able to access KCBOE property to pick up her younger children, who attended Knox County schools other than New Hopewell Elementary. [*Id.* ¶ 24]. After receiving the letter, she and Shaque Johnson did not protest against Principal Pratt again. [*Id.*].

### III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move for dismissal of a complaint for failure to state a claim upon which relief may be granted. The propriety of dismissal under Rule 12(b)(6) is a question of law. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). When reviewing a motion to dismiss for failure to state a claim, the Court must "construe the complaint in the light most favorable to the non-moving party, accept the well-pleaded factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain "detailed factual allegations." *Twombly*, 550 U.S. at 555. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

4

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up).[1]

## IV. DISCUSSION

### A. Individual Defendants

Moving for dismissal of the Second Amended Complaint under Rule 12(b)(6), Wade and Timms assert that Plaintiffs fail to state a claim upon which relief may be granted. Defendants also raise a defense of qualified immunity.

In order to demonstrate liability under § 1983 as to any defendant, a plaintiff must first establish that the defendant acted under color of state law, and that his actions violated the rights secured by the Constitution and laws of the United States. The plaintiff must also make a clear showing that the particular defendant was personally involved in the activity that forms the basis of the complaint. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiffs have pleaded four separate First Amendment claims as to all Defendants: deprivation of (1) freedom of speech, (2) freedom of expression, and (3) freedom of protest, and (4) retaliation. [Doc. 42 ¶¶ 30–39]. Plaintiffs' free-speech, free-expression, and free-protest claims are based on the same facts and share a common legal framework. *See Ramsek v. Beshear*, 468 F. Supp. 3d 904, 914–15 (E.D. Ky. 2020) ("Courts typically evaluate free speech, assembly and

---

[1] The Rule 12(b)(6) standard is identical to the failure-to-state-a-claim standard that the Court applies when screening a complaint under Section 1915(e)(2)(B). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). However, the fact that Plaintiffs' claims against Wade, Timms, and KCBOE survived screening of the First Amended Complaint does not preclude the Court from revisiting the viability of those claims here. *See Magruder v. Grafton Corr. Inst.*, No. 1:19CV1980, 2020 U.S. Dist. LEXIS 93926, at *8 (N.D. Ohio Apr. 1, 2020) (citation omitted) ("A § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment.").

petition claims under the same analysis."); *Knight v. Montgomery Cnty.*, 592 F. Supp. 3d 651, 658–69 (M.D. Tenn. 2022) (applying the three-part freedom-of-speech inquiry to plaintiff's freedom-of-expression claim). Therefore, the Court will analyze those claims together under the designation "First Amendment rights" claims. Plaintiffs' retaliation claims are based on the same facts as the First Amendment rights claims, but the legal standard for retaliation is distinct. Hence, the Court will address Plaintiffs' retaliation claims separately.

1. **Deprivation of First Amendment Rights**

Plaintiffs assert that Defendants Wade and Timms deprived them of their First Amendment rights by interfering with their protest against Principal Pratt and threatening to ban Rebekiah Johnson from KCBOE schools. To analyze a claim involving a First Amendment rights deprivation, courts engage in a three-part inquiry: first, the court determines whether the speech at issue is afforded constitutional protection; second, the court examines the nature of the forum where the speech was made; and third, the court assesses whether the government's justification for excluding the plaintiff from the relevant forum satisfies the applicable standard of review. *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 242 (6th Cir. 2015) (citations omitted). Speech is generally protected by the First Amendment, with restrictions on only limited types of speech, such as obscenity, defamation, and fighting words. *R. A. V. v. St. Paul*, 505 U.S. 377, 382–83 (1992).

Defendants argue that Plaintiffs' protest—and in particular Rebekiah Johnson's sign calling Mr. Pratt a "racist"—was not protected by the First Amendment because it was defamatory and disruptive to the educational environment. [Doc. 49 at 12–13]. In support of this argument, Defendants cite caselaw showing that schools can regulate vulgar or insubordinate speech on school grounds. [*Id.* at 13]. The Court agrees that Rebekiah Johnson's sign was capable of causing a disruption on campus. However, Defendants have cited no

authority showing that a school can restrict the speech of private citizens like the Johnsons, who were protesting on public property within sight of the school. At this stage of the proceedings, Plaintiffs have adequately alleged that their protest was protected by the First Amendment.[2]

Wade asserts that his conduct did not violate Plaintiffs' First Amendment rights. Specifically, he points out that the Second Amended Complaint recites no interaction between him and Rebekiah Johnson and his interaction with Shaque Johnson involved no physical intimidation. [Doc. 49 at 5]. In addition, Wade argues that he cannot be held liable under § 1983 because he was acting as an individual, not as a government employee. [*Id.* at 6]. Because there is no indication in the Second Amended Complaint that Wade was personally involved in the activity that forms the basis of Rebekiah Johnson's injury, her First Amendment rights claim against Wade will be **DISMISSED**. However, at this stage of the proceedings, Shaque Johnson has sufficiently alleged that Wade's conduct violated his First Amendment rights. According to the Second Amended Complaint, Wade yelled at Shaque Johnson, told him not to record, and threatened to take his phone. Moreover, even if Wade overstepped the bounds of his duties as a teaching assistant, the facts suggest that he was acting in his capacity as a school employee when he interrupted Shaque Johnson's protest. *Neuens v. City of Columbus*, 275 F. Supp. 2d 894, 900 (S.D. Ohio 2003) (citing *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir. 1975)) ("an officer acts under color of law when he acts in performance of his official duties, whether he strictly adheres to those duties or oversteps the bounds of his authority.").

---

[2] Shaque Johnson's act of video recording may also implicate First Amendment concerns. *See Knight v. Montgomery Cnty.*, 470 F. Supp. 3d 760, 765–66 (M.D. Tenn. 2020) (observing that although the issue is far from settled, "nationwide there is a growing trend of courts adopting the view that video recording is indeed speech for First Amendment purposes" and citing several examples).

7

Timms also maintains that he did not violate Plaintiffs' First Amendment rights. In particular, he points out that the Second Amended Complaint alleges no interactions between him and Shaque Johnson. [*Id.* at 6]. Timms also asserts that the civility code letter he sent to Rebekiah Johnson was merely a warning and did not deprive her of any rights. [*Id.* at 7]. Given that Timms did not address the civility code letter to Shaque Johnson and the Second Amended Complaint alleges no interaction between them, Shaque Johnson's First Amendment rights claim against Timms will be **DISMISSED**. However, the civility code letter that Timms sent to Rebekiah Johnson essentially prohibited her from protesting about Principal Pratt near the school. Hence, Rebekiah Johnson has sufficiently alleged that Timms deprived her of her free speech rights.

### 2. Retaliation

Plaintiffs also claim that Defendants retaliated against them for their protest. To state a First Amendment retaliation claim, a plaintiff must show that: "(1) he engaged in protected conduct; (2) the defendants took an adverse action against him; and (3) a causal connection exists between the two." *Rudd v. City of Norton Shores*, 977 F.3d 503, 513 (6th Cir. 2020). "An adverse action is one that is '*capable* of deterring a person of ordinary firmness' from exercising the constitutional right in question." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (citing *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002)) (emphasis in original). The first element has been met because, as discussed above, the Court finds that Plaintiffs have plausibly engaged in protected conduct.

Wade argues that his conduct did not constitute an adverse action against Plaintiffs. He contends that Rebekiah Johnson's retaliation claim, like her First Amendment claim against him, fails because he had no interaction with her. [Doc. 49 at 5]. The Court agrees, and Rebekiah Johnson's retaliation claim against Wade will be **DISMISSED**. Wade also argues

8

that his interaction with Shaque Johnson did not constitute an adverse action because the Johnsons "stood their ground and continued their protest." [*Id.* at 14]. Certainly, the fact that Shaque Johnson was not deterred from protesting suggests that his speech was not chilled by Wade. But the adverse action test is objective. As such, "the issue is whether a person of ordinary firmness would be deterred, not whether the plaintiff himself actually was deterred." *Holzemer v. City of Memphis*, 621 F.3d 512, 525 (6th Cir. 2010) (citing *Harris v. Bornhorst*, 513 F.3d 503, 519 (6th Cir. 2008)) (cleaned up). Viewing the Second Amended Complaint in the light most favorable to Shaque Johnson, Wade's threats could have chilled the speech of an ordinary person.

Like Wade, Timms claims that he did not engage in an adverse action against Plaintiffs. As Timms points out, Shaque Johnson has not alleged that Timms personally interacted with him. [Doc. 49 at 14]. Hence, Shaque Johnson's retaliation claim against Timms is **DISMISSED**. Timms also contends that the civility code letter that he sent to Rebekiah Johnson was not an adverse action because it did not actually threaten criminal prosecution. However, the letter threatened Rebekiah Johnson that if she engaged in another "inappropriate and disruptive" protest, the school would ban her from all Knox County schools. This letter could deter a person of ordinary firmness from engaging in another protest, especially if that person, like Rebekiah Johnson, had children attending schools in Knox County. Indeed, Rebekiah Johnson maintains that because of the letter she did not protest against Principal Pratt again. [*Id.*]. Accordingly, Rebekiah Johnson states a claim for First Amendment retaliation against Timms.

### 3. Qualified Immunity

Both Wade and Timms raise the defense of qualified immunity. [Doc. 49 at 3].

Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Dismissal on qualified immunity grounds is generally not appropriate under Rule 12 because "development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (citation and internal quotation marks omitted). In order to overcome a defendant's qualified immunity defense at the motion to dismiss stage, a plaintiff must plausibly allege facts showing "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

The Court has already found that Defendants' conduct plausibly violated Plaintiffs' constitutional rights. Thus, the only remaining issue is the second prong of the qualified immunity analysis.

According to Wade and Timms, their conduct did not violate a clearly established right. [Doc. 49 at 10–11]. However, the Court disagrees. It is well established that a citizen's right to speak publicly on matters of public concern—such as alleged racial discrimination by a school principal—is afforded broad protection under the First Amendment. *See Gerber v. Herskovitz*, 14 F.4th 500, 508–09 (6th Cir. 2021) (cleaned up) ("Speech at a public place on a matter of public concern is entitled to special protection under the First Amendment."); *Perry v. McGinnis*, 209 F.3d 597, 608 (6th Cir. 2000) ("[T]he Supreme court [has] clearly established that racial discrimination is inherently a matter of public concern."). And the First Amendment robustly protects a citizen's right to criticize public officials, even when

10

that criticism is not of public concern. *See Lucas v. Monroe County,* 203 F.3d 964, 973 (6th Cir. 2000) (citation omitted) ("Freedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment."). At a later stage of proceedings, Defendants could prevail on a qualified immunity defense. However, at this stage, Plaintiffs have met the low bar of plausibly alleging that they had a clearly established right to protest free from Defendants' interference. Accordingly, dismissal on qualified immunity grounds is premature.

Defendants' motion to dismiss Shaque Johnson's claims against Wade, and Defendants' motion to dismiss Rebekiah Johnson's claims against Timms are therefore **DENIED**.

### B. Knox County Board of Education

As with the individual defendants, Plaintiffs allege that KCBOE deprived them of their First Amendment rights and retaliated against them. A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a local governmental unit may be liable in a § 1983 action only when the execution of a governmental policy or the toleration of a custom causes the deprivation of a constitutionally protected right. *Doe v. Claiborne Cnty.,* 103 F.3d 495, 507 (6th Cir. 1996) (citing *Monell*, 436 U.S. at 690–91). A policy or custom may be established by demonstrating: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). KCBOE argues

that Plaintiffs have not demonstrated a custom or policy under any of the four methods listed above. [Doc. 48 at 8]. The Court agrees.

Plaintiffs' claims against KCBOE are primarily based on the "custom" theory of liability. According to Plaintiffs, KCBOE "has an irrefutable habit of excluding parents who speak about racism and who they don't like," and the school system's "intrusive unchecked system or way of doing things" has led to the school system's "infringing on parents' (families) constitutional rights to freedom of speech when families of color are both on [and off school] property." [Doc. 42 ¶¶ 16, 32]. However, these conclusory statements are insufficient to establish a custom of restricting speech for race-based reasons. *See Pethtel v. Tenn. Dep't of Child.'s Servs.*, No. 21-5864, 2023 U.S. App. LEXIS 12744, at *12 (6th Cir. May 23, 2023) (citing *Lanier v. Bryant*, 332 F.3d 999, 1007 (6th Cir. 2003) ("'Conclusory, unsupported allegations' that a municipality had a custom or policy that resulted in the deprivation of the plaintiff's constitutional rights do not state a § 1983 claim under *Monell*."); *see also Carmichael v. City of Cleveland*, 571 F. App'x 426, 433 (6th Cir. 2014) (finding plaintiff's allegation that Warrensville Heights and Cleveland had a custom or practice of not promptly investigating missing persons cases involving African-Americans too conclusory to state a claim for municipal liability). Moreover, Plaintiffs' own experience is insufficient to demonstrate municipal liability under § 1983. *Epperson v. City of Humboldt, Tenn.*, 140 F. Supp. 3d 676, 685 (W.D. Tenn. 2015) ("When the plaintiff has none but his own experience upon which to rely, a sufficient claim against the municipality has not been made.").

None of the other three methods of establishing an unlawful municipal custom or policy apply here. Plaintiffs have not alleged that their injuries were caused by an illegal official policy or legislative enactment. The Second Amended Complaint does not contain facts showing a policy of failure to train or supervise KCBOE employees. And there is no indication that an official with

final policy-making authority violated Plaintiffs' constitutional rights. *See Miller v. Calhoun Cnty.,* 408 F.3d 803, 814 (6th Cir.2005) (internal quotation marks and citation omitted) ("A policymaker's decisions are final and unreviewable and are not constrained by the official policies of superior officials."). As Defendant points out, under Tennessee law, final policy-making authority rests with the KCBOE, not with a teacher's aide like Wade, or a security investigator like Timms. *See* Tenn. Code Ann. § 49-2-203(a)(2) ("It is the duty of the local board of education to . . . manage and control all public schools established or that may be established under its jurisdiction.").

Given that Plaintiffs' failure to adequately plead a custom or policy is dispositive, the Court will not reach KCBOE's additional arguments. KCBOE's motion to dismiss is **GRANTED**.

## V. CONCLUSION

For the reasons discussed above, Wade and Timms' Motion to Dismiss the Second Amended Complaint [Doc. 49] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, their motion is **GRANTED** as to Rebekiah Johnson's claims against Wade and Shaque Johnson's claims against Timms. And the motion is **DENIED** with respect to Shaque Johnson's claims against Wade and Rebekiah Johnson's claims against Timms. Knox County Board of Education's Motion to Dismiss the Second Amended Complaint [Doc. 48] is **GRANTED**.

Defendants' motions to dismiss the First Amended Complaint [Docs. 23, 35] are **DENIED AS MOOT**.

So ordered.

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

13