UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SHAQUE JOHNSON and REBEKIAH JOHNSON, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:22-CV-00137-JRG-DCP ) |
| KNOX COUNTY BOARD OF EDUCATION, et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

In this pro se action under 42 U.S.C. § 1983, Plaintiffs allege violations of their First Amendment rights in connection with a protest they staged outside an elementary school in Knox County, Tennessee. After initial screening and the litigation of motions to dismiss, the only remaining claims are Rebekiah Johnson's retaliation claim against Martin Timms and Shaque Johnson's First Amendment rights violation claim against Fred Wade. Defendants filed motions for summary judgment [Docs. 85, 89]. Ms. Johnson responded in opposition to Timms' motion [Doc. 99], and Mr. Johnson signed that response, but did not respond to Wade's motion for summary judgment. Defendants filed replies [Docs. 106, 108]. As discussed below, Defendants' motions for summary judgment will be **GRANTED** and this action will be **DISMISSED with PREJUDICE**.

### I. BACKGROUND

On March 31, 2022, Ms. Johnson and her young adult son Shaque Johnson traveled to New Hopewell Elementary School ("New Hopewell"), near the end of the school day. [Doc. 83-11 at 6; Doc. 83-12 at 2; Doc. 100 at 2]. New Hopewell is a small elementary school, situated

Case 3:22-cv-00137-JRG-DCP   Document 113   Filed 05/27/25   Page 1 of 11
PageID #: 1264

alongside a two-lane county road in a rural area. [Doc. 83-1 ¶ 3; Defs.' Manual Ex. 1, Facility Video]. There is a U-shaped driveway, leading up to the front of the school. [Doc. 83-11 at 4]. A fence divides the school grounds from the road. [Facility Video]. And there is a grassy area between the fence and the road that is maintained by Knox County Schools ("KCS"). [Facility Video; Doc. 83-9 ¶ 5]. A playground is located on one side of the driveway. [Facility Video].

The Johnsons' purpose in coming to New Hopewell was to stage a protest, calling attention to the alleged racism of the school's principal, Brandon Pratt. [Doc. 83-11 at 6]. Ms. Johnson believed Pratt was responsible for banning her husband from KCS property six years earlier, while Pratt was principal at another school. [*Id.* at 6, 8, 12]. The Johnsons had no connection to New Hopewell except that it was the place where Pratt now worked. [*Id.* at 24–25]. Ms. Johnson had a sign that said "Mr. Pratt is racist. eagleswithcolor.com" on one side, while the other side read, "The Community needs to know! eagleswithcolor.com." [*Id.* at 13; Doc. 83-13 at 1–2]. Mr. Johnson had a sign that said "Mr. Pratt was wrong. Read eagleswithcolor.com" on one side and "the TRUTH about Principal Pratt, eagleswithcolor.com" on the other side. [Doc. 42 ¶ 15].

When the Johnsons arrived at New Hopewell, a class of third grade students was on the playground for "last recess." [Doc. 83-1 ¶ 5]. Several children gathered at the fence to watch the protesters and then notified their teacher, Stacy Burton, that people were holding signs and saying things about Principal Pratt. [*Id.* ¶ 6]. Burton walked down to the fence and took three or four children who had gathered at the fence back up to the school. [*Id.* ¶ 7]. According to Burton, the children were "visibly upset" by what the protesters were saying about the principal. [*Id.* ¶ 8].

As school let out for the day, Ms. Johnson stood near the entrance to the school, holding her sign. [Doc. 83-11 at 4]. She positioned herself on the grass, as close to the road as possible

without being hit. [*Id.*]. The facility video shows multiple vehicles lining up to enter the school driveway. [Facility Video]. Some parents asked Ms. Johnson questions as they entered the driveway and she answered them, but did not initiate any conversations. [Doc. 83-11 at 7]. A TikTok video shows a parent vehemently telling Ms. Johnson that Mr. Pratt is not a racist, while driving and recording the interaction on her phone. [Defs.' Manual Ex. 3, Parent TikTok Video of Interaction with Ms. Johnson].

Meanwhile, Mr. Johnson stood across the street from the exit of the school, holding his sign. [Facility Video at 02:10–41:15]. People asked him questions and took pictures of his sign. [Doc. 83-12 at 2]. Fred Wade, who was a teacher assistant at New Hopewell at the time, went down to the front of the driveway across the road from where Mr. Johnson was standing, approximately forty feet away. [*Id.* at 2, 4, 6; Facility Video at 26:28–27:05]. The school security officer came over to stand beside Wade and Mr. Johnson began recording them with his phone. [Facility Video at 27:26–28:02; Defs.' Manual Ex. 2, Mr. Johnson Cell Phone Recording]. Wade told Mr. Johnson not to record him and threatened to take Mr. Johnson's phone. [Doc. 83-12 at 4–5]. Then Wade started to record Mr. Johnson. [Mr. Johnson Cell Phone Recording]. Mr. Johnson told Wade he was not allowed to do that. [*Id.*]. A minute or so later, Wade walked away. [*Id.* at 7]. Mr. Johnson continued to record until Wade had gone and did not stop protesting [*Id.* at 17–18]. The interaction between Wade and Mr. Johnson lasted approximately three minutes.

The Johnsons continued to protest until the school driveway had "pretty much cleared out." [Doc. 42 ¶ 20]. Then they packed up their signs and left. [*Id.*].

After learning about the protest, the Chief of the KCS security department, Jason Periard, held a meeting regarding the protest with Lieutenant Martin Timms, Chief Operations Officer Russ Oaks, and Deputy Law Director Gary Dupler. [Doc. 83-4 ¶ 8]. At the meeting, the discussion

3

focused on the location of the protest and the disruption to school operations during dismissal time. [Doc. 83-8 ¶ 5]. Periard, Timms, and Dupler had reviewed the facility video of the protest, as well as the video taken by the parent who recorded her interaction with Ms. Johnson. [*Id.* ¶ 8]. They concluded that Ms. Johnson had been protesting on school property and discussed the possibility of issuing a "No Trespass letter," banning Ms. Johnson from KCS property. [*Id.* ¶ 9]. However, ultimately Dupler advised that a civility code letter was more appropriate. [Doc. 83-4 ¶¶ 8–9]. Periard then directed Timms to send a civility code letter to Ms. Johnson. [*Id.* ¶ 8].

On April 1, 2022, Timms sent Ms. Johnson a civility code letter similar to those he has issued to other parents in the course of his duties. [Doc. 83-8 ¶ 10]. The letter stated in relevant part as follows:

> It has come to the attention of the Knox County Schools Security Division that your recent protest at New Hopewell Elementary School has been inappropriate and disruptive. As a result of this behavior, you are being issued a civility code letter.
>
> Your actions are in violation of Knox County Board of Education Policy B-230, with particular attention to EXPECTATIONS, line (24) which reads:
>
> "Students, faculty, staff, parents, guardian and all other members of the community shall:
>
> (24) Refrain from behavior that threatens or attempt to disrupt school or school district operations: physically harms someone; intentionally causes damage; employs loud or offensive language, gestures, or profanity; or inappropriately shows a display of temper."
>
> Further violations in Knox County Schools Board Policy B-230 may result in you being banned from coming on to any property owned or controlled by Knox County Schools. Please understand that all Knox County Schools property is "controlled access" property. This means, by state law and school board policy, the school system has final authority on who may or may not be on campus at any time, for any reason.

[Doc. 42-2]. The letter also advised that Ms. Johnson needed to "make [her]self aware of" the Tennessee criminal laws prohibiting trespass and disorderly conduct. [*Id.*]. After receiving this

4

Case 3:22-cv-00137-JRG-DCP    Document 113    Filed 05/27/25    Page 4 of 11
PageID #: 1267

letter, Ms. Johnson—who needed to be able to access KCS property to pick up her younger children who attended other schools—discontinued her plans to protest. [Doc. 83-11 at 21].

Property records show that the land where Ms. Johnson was protesting is owned by Knox County Board of Education, subject to a public right of way. [Doc. 83-3]. The right of way extends thirty feet from the centerline of the road in each direction perpendicular to the road. [*Id*. ¶ 5]. During the litigation of this case, Periard and Timms learned that Ms. Johnson's protest occurred on the public right of way. [Doc. 83-4 ¶ 10]. On May 20, 2024, Timms sent Ms. Johnson a letter, stating that due to their "recent discovery" that her conduct occurred on the right of way, the civility code letter was rescinded.[1] [Doc. 102-1; Doc. 101 ¶ 7].

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). If no proof is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

Because Plaintiffs are proceeding pro se, the Court liberally construes their filings. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005). However, pro se status does not relieve them from their summary judgment burden of supporting their factual assertions with admissible evidence. *Viergutz v. Lucent Techs.*, 375 F. App'x 482, 485 (6th Cir. 2010).

---

[1] Since the civility letter was rescinded, Ms. Johnson has not protested again due to her busy schedule. [Doc. 83-11 at 23].

## III.    DISCUSSION

In order to demonstrate liability under § 1983, Plaintiffs must "establish that a person acting under color of state law deprived them of a right secured by the Constitution or laws of the United States." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008) (citing *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006)). Ms. Johnson alleges that Timms violated her First Amendment rights by retaliating against her for protesting. Mr. Johnson alleges that Wade violated his First Amendment rights by interacting with him during the protest.

Defendants have raised the defense of qualified immunity. Qualified immunity protects government employees from liability under § 1983 provided their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *District of Columbia v. Wesby*, 583 U.S. 48 (2018) (citing *Reichle* v. *Howards*, 566 U. S. 658, 664 (2012)). For a right to be clearly established, "the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Saucier* v. *Katz*, 533 U. S. 194, 202 (2001)) (cleaned up).

Once the defense of qualified immunity is raised, the plaintiff bears the burden of showing that the right was clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). The plaintiff need not cite "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Kent v. Oakland Cnty.*, 810 F.3d 384, 395 (6th Cir. 2016) (cleaned up) (citing *Stanton v. Sims*, 571 U.S. 3 (2013)). The defendant bears the burden of showing that his actions were objectively reasonable in light of the law existing at the time. *Harris v. Klare*, 902 F.3d 630, 637 (6th Cir. 2018). "In satisfying this burden, a defendant can rely on a reasonable mistake of fact, for qualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions

6

of law and fact." *James v. Anderson*, No. 12-10273, 2018 U.S. Dist. LEXIS 199332, at *71 (E.D. Mich. Nov. 26, 2018) (cleaned up) (citing *Harris*, 902 at 637).

Qualified immunity is a demanding standard that "protects all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### A. Rebekiah Johnson's Retaliation Claim Against Martin Timms

Timms asserts that Ms. Johnson's retaliation claim against him fails because she did not engage in conduct protected by the First Amendment.[2] Specifically, he argues that her protest was not protected speech because her sign calling Principal Pratt "racist" was defamatory. [Doc. 85 at 7–10]. Alternatively, Timms maintains that he is entitled to qualified immunity because under the circumstances he faced, the civility code letter was not clearly unlawful. [*Id.* at 10–17].

Because Timms has raised the defense of qualified immunity, Ms. Johnson bears the burden of showing that he violated her clearly established rights. She argues that she had a clearly established right to be free from retaliation for protesting in the public right of way. [Doc. 99 at 4–5]. It is well-established "that private citizens have a First Amendment right to criticize public officials and to be free from retaliation for doing so." *Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010). And a public right of way is traditionally a location where citizens enjoy robust free speech protections. *See Madsen v. Women's Health Ctr.*, 512 U.S. 753, 764 (1994) (describing street, sidewalk, and right of way surrounding a clinic as a traditional public forum). However, "the right to engage in expressive activity on public property is not absolute and must be balanced against interests served by the other uses to which the property is put." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 817–18 (1985).

---

[2] The elements of a First Amendment retaliation claim are that (1) the plaintiff engaged in protected conduct, (2) the defendants took an adverse action against her, and (3) a causal connection exists between the two. *Rudd v. City of Norton Shores*, 977 F.3d 503, 513 (6th Cir. 2020). Speech is generally protected by the First Amendment, with restrictions on only limited types of speech, such as defamation, obscenity, and fighting words. *R. A. V. v. St. Paul*, 505 U.S. 377, 382–83 (1992).

7

The right of way where Ms. Johnson protested was on land occupied by a public elementary school. Public schools, and in particular elementary schools, are not conducive to all expressive activity. *Quappe v. Endry*, 772 F. Supp. 1004, 1011 (S.D. Ohio 1991) ("[A]n elementary school is a forum inconsistent with unfettered expressive activity."); *Bell v. Little Axe Indep. Sch. Dist.*, 766 F.2d 1391, 1401 (10th Cir. 1985) (observing that an elementary school is especially unlikely to be a public forum because it "has a far more circumscribed curriculum" than secondary schools and "most school children are unable to appreciate or initiate a wide diversity of viewpoints."). And school officials may exclude a person from school property "in order to preserve order in the educational process or to protect students from potential harm without violating any fundamental right to go onto or access school property." *Mejia v. Holt Pub. Sch.,* Case No. 5:01-CV-116, 2002 U.S. Dist. LEXIS 12853, at *13–14 (W.D. Mich. Mar. 12, 2002).

Given that Ms. Johnson's protest occurred in front of an elementary school, the general principle that a citizen is free from retaliation for protected speech was not sufficiently specific to clearly establish that Timms' conduct was unconstitutional. Ms. Johnson has not identified any legal authority indicating that a citizen has a right to protest a public school official on the right of way of an elementary school while children are present. The Court, in its research, has not found such a case. Hence, if Ms. Johnson had a right to engage in the protest it was not clearly established.

Moreover, given the safety concerns raised by the protest, Timms' decision to send the civility code letter was not clearly unlawful. The protest occurred during the busy dismissal time when there were numerous cars entering and exiting the school grounds. Ms. Johnson presented a distraction to drivers, as illustrated by the TikTok video taken by a parent, simultaneously driving, passionately engaging with Ms. Johnson, and recording the interaction on her phone. And Timms was instructed to send the civility code letter—which warned Ms. Johnson but did not ban her

8

Case 3:22-cv-00137-JRG-DCP   Document 113   Filed 05/27/25   Page 8 of 11
PageID #: 1271

from school property—by the chief of KCS security. *See Hall v. Navarre*, No. 23-1711, 2024 U.S. App. LEXIS 25052, at *21 (6th Cir. Oct. 3, 2024) (finding that "a superior officer's credible instruction" supports a finding of qualified immunity).

Timms' actions were all the more reasonable considering that he did not realize Ms. Johnson was protesting on a right of way. As reflected in Timms' testimony and the civility code letter—which references Ms. Johnson's "recent protest at New Hopewell Elementary School" and cites trespass statutes—Timms believed she was an unauthorized visitor on school property.[3] [Doc. 83-8 ¶ 11; Doc. 42-2]. This mistake was not unreasonable given that Ms. Johnson was standing on a grassy area without a sidewalk to indicate a public right of way.[4] Indeed, the Chief Security Officer and school attorney also made the same error. Qualified immunity protects Timms from liability for this good faith mistake. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (observing that qualified immunity "serves to protect 'reasonable' but 'mistaken' decisions by officials acting in good faith.").[5]

In sum, Ms. Johnson has not shown that she had a clearly established right to engage in the protest under the circumstances of this case. And the civility code letter was not clearly unlawful.

---

[3] The Knox County Board of Education policy for school visitors generally requires that "[d]uring the school day and immediately before and after the school day all visitors will report to the school office when entering the school and log in with the administration." [Doc. 102-1 at 2].

[4] Courts have found that an officer's failure to recognize a public right of way was reasonable. *See, e.g. Skovgard v. Pedro*, 448 F. App'x 538, 544 (6th Cir. 2011) (finding that officer reasonably believed plaintiffs were protesting on private property when they were standing in a grassy area that appeared to be part of a clinic's property); *Jones v. Valparaiso Cmty. Sch. Corp.*, No. 2:21 CV 370, 2024 U.S. Dist. LEXIS 38142 (N.D. Ind. Mar. 4, 2024) (finding that an officer who issued a no trespass warning reasonably believed the sidewalk in front of an elementary school was school property, when it was actually a public right of way).

[5] Ms. Johnson acknowledges that schools have authority to impose time, place and manner restrictions. [Doc. 99 at 2–3]. However, she claims that KCS forfeited that authority by failing to impose restrictions on individuals protesting the mask mandate at Farragut High School during the COVID-19 pandemic. [Doc. 99 at 2–3]. This argument clearly fails because Timms was not involved in responding to the Farragut High School protest. [Doc. 83-8 ¶ 11]. And there is no vicarious liability under § 1983. *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

Hence, Timms is entitled to qualified immunity. Given that qualified immunity is dispositive, the Court will not address Timms' other arguments.

B.  **Shaque Johnson's First Amendment Violation Claim Against Fred Wade**

Wade maintains that Mr. Johnson cannot establish a First Amendment rights violation because he did nothing to hinder Mr. Johnson from protesting.[6] [Doc. 89 at 7]. The Court agrees. Wade's interaction with Mr. Johnson consisted of an approximately three-minute verbal altercation. During that time, Wade did not physically approach Mr. Johnson, who was standing across the road approximately forty feet away, or tell him to stop protesting. Mr. Johnson was not deterred from recording Wade and continued to protest even after Wade had left. Indeed, in his deposition testimony, Mr. Johnson acknowledged that Wade did not interfere with his protest. [Doc. 83-12 at 17–18]. Given the brevity of the interaction, and the little, if any, impact Wade's words had on Mr. Johnson's protest, no reasonable juror could find that Wade violated Mr. Johnson's rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) ("[C]ertain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations [.]"). Because Mr. Johnson cannot establish that his rights were violated, Wade is entitled to summary judgment.[7]

IV.  **CONCLUSION**

---

[6] To analyze a claim alleging deprivation of the First Amendment right to freedom of speech, courts typically engage in a three-part inquiry: first, the court determines whether the speech at issue is afforded constitutional protection; second, the court examines the nature of the forum where the speech was made; and third, the court assesses whether the government's justification for excluding the plaintiff from the relevant forum satisfies the applicable standard of review. *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 242 (6th Cir. 2015) (citations omitted). This standard, which also applies to freedom of expression and freedom of protest claims, assumes that the plaintiff's speech has been excluded from the relevant forum, which, as discussed above, did not occur here.

[7] The Court notes that Mr. Johnson's claim is also subject to dismissal based on his failure to respond to Wade's summary judgment motion. *See* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought.").

For the reasons stated above, Defendants' motions for summary judgment [Docs. 85, 89] are **GRANTED** and this action is **DISMISSED with PREJUDICE**. The Court **CERTIFIES** that an appeal from this order would not be taken in good faith and would be frivolous. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A). Any application by Plaintiffs to proceed in forma pauperis on appeal is therefore preemptively **DENIED**.

An appropriate judgment order will enter.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE